## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ——————————————————— ) | |
| NGM INSURANCE COMPANY,                    ) | |
|                     Plaintiff              ) | |
|                                            ) | |
|         v.                                 ) | **Civ.Act.No. 17-40163-TSH** |
|                                            ) | |
| MARC PILLSBURY, JENNIFER PILLSBURY,        ) | |
| JANE MANSFIELD, as personal representative of the ) | |
| ESTATE OF THOMAS MANSFIELD and             ) | |
| JANE MANSFIELD,                            ) | |
|                     Defendants.            ) | |
| ——————————————————— ) | |

### MEMORANDUM OF DECISION AND ORDER
#### September 12, 2019

**HILLMAN, D.J.**

### Introduction

NGM Insurance Company ("NGM") has filed an action pursuant to 28 U.S.C. §2201 seeking a declaration of rights and obligations under an automobile insurance policy it issued to Marc Pillsbury ("M. Pillsbury"). M. Pillsbury is being sued in state court with wrongful death and personal injury lawsuits by Jane Mansfield, representative of the Estate of Thomas Mansfield ("Estate") and Jane Mansfield ("J. Mansfield"), individually, as the result of an accident involving a car driven by M. Pillsbury. NMG seeks a declaratory judgment that it has no duty to defend or indemnify M. Pillsbury in those actions.

This Memorandum of Decision and Order addresses Plaintiff, NGM Insurance Company's Motion for Summary Judgment (Docket No. 30).   For the reasons set forth below, that motion is *granted*, in part, and *denied*, in part.

### Facts[1]

#### Background Facts

On July 13, 2016, J. Mansfield filed a personal injury action in Worcester Superior Court against M. Pillsbury. Thereafter, the Estate filed a separate wrongful death claim in Worcester Superior Court.[2]   The complaints in both underlying matters allege that on August 3, 2013, a motorcycle operated by T. Mansfield, and carrying J. Mansfield, his wife, as a passenger, was travelling on Meadow Road in Spencer, Massachusetts when it collided with a motor vehicle (the "Ford Flex") operated by M. Pillsbury.   The registered owner of the Ford Flex was M. Pillsbury's wife, J. Pillsbury. M. Pillsbury is a self-employed sign installer and drives a 2012 Nissan which is insured by him under a policy issued by NGM.

M. Pillsbury told officers that he was driving the Ford Flex and that he had just left a wedding at Zukas Hilltop Barn in Spencer, Massachusetts. There were approximately one hundred people at the wedding.   Of that number. he knew "five or six."   M. Pillsbury had never done any business with those five or six people and had never had any professional or business relationship with the bride or groom. Moreover, he did not see anyone at the wedding that he

---

[1]  In accordance with LR, D.Mass, 56.1, NGM filed a concise statement of material facts of record as to which it contends there is no in dispute. M. Pillsbury and J. Pillsbury were then obligated to file a concise statement of facts as to which they contend a genuine issue of material fact exists. The Defendants failed to file comply with Rule 56.1. Instead, they simply sprinkled additional facts throughout the discussion section of their memorandum and in their argument at the hearing. It is not this Court's obligation to search the record to try to determine what facts the Defendants contend are in dispute. Because of Defendants' failure to comply with Rule 56.1, I accept NGM's version of the facts.

[2]  At the hearing on NGM's motion, the parties informed the Court that the Estate's wrongful death suit had been settled.

interacted with through the course of any prior employment. M. Pillsbury stated that he would

not have attended the wedding without his wife and he was not operating the Ford Flex in

connection with his business or employment.

At the time of the accident, both M. Pillsbury and J. Pillsbury were living at 1 Frankie

Lane, North Grafton, Massachusetts. M. Pillsbury never rented or leased the Ford Flex from his

wife, never hired the vehicle to do any work for his company and had no recollection of J.

Pillsbury ever using her Ford Flex to run any company errands.   M. Pillsbury rarely used the

Ford Flex, but when he did so, he would not use it for company business.   M. Pillsbury's

business never gave J. Pillsbury any money in exchange for the use of the Ford Flex.

<u>The Policy</u>

NGM issued Policy No. M1T5266D, a commercial automobile policy, to M. Pillsbury,

for the policy period February 13, 2013 to February 13, 2014 (the "Policy"). The Policy states

that the terms "you" and "your" refer to the "Named Insured" shown in the Declarations, which

in this case is "Marc Pillsbury." The Declarations page describes M. Pillsbury's business as "sign

installation and repair," and states that the form of business is corporation. According to M.

Pillsbury he was self-employed by Northern Exposure Sign and Graphics, which is a limited

liability company.

The Policy contains the following relevant language:

SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each
of your coverages. The following numerical symbols describe the "autos" that
may be covered "autos".

The symbols entered next to a coverage on the Declarations designate the only
"autos" that are covered "autos".

A. Description of Covered Auto Designation Symbols

***

7 - Specifically Described "Autos"[3]

Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).

8 – Hired "Autos" Only

Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

9 – Non-owned "Autos" Only

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members or their households but only while used in your business or personal affairs.

The Policy further contains the following additional relevant language:

SECTION II – LIABILITY COVERAGE

A. Coverage

We will pay all sums an "Insured" legally must pay as damage because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

***

---

[3]   Only a 2012 Nissan appears on Item Three of the Declarations, which is the "schedule of covered autos which you own."   The Ford Flex that M. Pillsbury was driving at the time of the accident underlying this matter does not appear on the on Item Three of the Declarations.

4

1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    (1)    The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a trailer connected to a covered "auto" you own.

    (2)    Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

    (3)    Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

    (4)    Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

    (5)    A partner (if you are a partnership) or a member if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured described above but only to the extent of that liability.

The Policy further contains a Massachusetts Mandatory Endorsement, which provides in relevant part:

COMPULSORY BODILY INJURY TO OTHERS COVERAGE

A. Coverage

We will pay all sums an insured legally must pay as damages because of "bodily injury" caused by a covered "auto" in Massachusetts "accidents." The damages

we will pay are the amounts the injured person is entitled to collect for "bodily injury" through a court judgment or settlement.

-----------------------------------------------------------------

1. Who is an insured:

a. You.

b. Anyone else using a covered "auto" with your consent.

## Discussion

### *Standard of Review*

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (internal citation and quotation marks omitted).

The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Sensing*, 575 F.3d at 153. "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Id.* (citing *Carroll*, 294 F.3d at 236). These facts must not be merely allegations or denials of the moving party's pleadings. *Id.* Both "[c]onclusory allegations [and] improbable inferences" are insufficient to overcome summary judgment. *Sensing*, 575 F.3d at 153 (citing *Carroll*, 294 F. 3d at 236-37 (internal

quotations omitted).   "The test is whether, as to each essential element, there is 'sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Sensing,* 575

F.3d at 153 (citations omitted).

### Interpretation of an Insurance Policy

Massachusetts law provides that interpretation of an insurance policy is a question of law

for the court. The court applies general rules of contract interpretation, and looks first to the

actual policy language, which is "'given its plain and ordinary meaning.'" *Valley Forge Ins. Co.*

*v. Field,* 670 F.3d 93, 2012 (1st Cir. 2012). Like all contracts, an insurance policy is to be

construed according to the fair and reasonable meaning of its words. A "'coverage provision is

generally entitled to liberal construction in favor of coverage, while an exclusion is subject to a

narrow construction against the insurer.'" *A & W Maint., Inc. v. First Mercury Ins. Co.*, 91 F.

Supp. 3d 113, 126 (D. Mass. 2015)(citation to quoted case omitted). Accordingly, exclusionary

clauses must be strictly construed against the insurer so as not to defeat any intended coverage or

diminish the protection purchased by the insured. *See Vappi & Co.,* 348 Mass. at 431-432, 204

N.E.2d at 276 (1965).   Where "the relevant policy provisions are plainly expressed, those

provisions must be enforced according to their terms and interpreted in a manner consistent with

what an objectively reasonable insured would expect to be covered." *Vicor Corp. v. Vigilant Ins.*

*Co.*, 674 F.3d 1, 11 (1st Cir. 2012)(internal citation omitted).   Generally,"[w]here there is more

than one rational interpretation of policy language, however, 'the insured is entitled to the benefit

of the one that is more favorable to it.' " *Cent. Mut. Ins. Co. v. Bos. Tel., Inc.*, 486 F. Supp. 2d

180, 183 (D. Mass. 2007).   However, because the language of standard Massachusetts

automobile policies are approved by the Massachusetts Commissioner of Insurance, the general

rule that ambiguities are resolved against the insurer, as the drafter of the policy, does not apply.

*Oliveira v. Commerce Ins. Co.*, 94 Mass. App. Ct. 276, 279, 112 N.E.3d 1206, 1209 (2018),

*review denied,* 481 Mass. 1107, 121 N.E.3d 698 (2019).

### Determining the Duty to Defend

Under Massachusetts law, an insurer has a duty to defend when the allegations of the

complaint are "reasonably susceptible" of an interpretation that "roughly sketches a claim

covered by the policy terms." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 936 N.E.2d 408,

414 (2010).   "'In order for the duty of defense to arise, the underlying complaint need only

show, through general allegations, a possibility that the liability claim falls within the insurance

coverage.'" *Id.* (citation to quoted case omitted). The scope of an insurer's duty to defend is

"based not only on the facts alleged in the complaint but also on the facts that are known or

readily knowable by the insurer." *Manganella v. Evanston Ins. Co.*, 746 F. Supp. 2d 338, 345 (D.

Mass. 2010), *aff'd,* 700 F.3d 585 (1st Cir. 2012)(citation to quoted case omitted).   "However,

when the allegations in the underlying complaint lie expressly outside the policy coverage and its

purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Billings*, 458

Mass at 194, 936. N.E.2d at 414 (internal quotations omitted).

> 'The burden[] of persuasion begin with the obligation of the insured party to
> prove coverage and then may shift to the insurer to prove that an exclusion
> applies.' Once the insured party's ultimate burden regarding coverage is satisfied
> with regard to at least one claim against the insured, the insurer has a duty to
> defend generally. Taken together, these legal propositions mean that if [the
> claimant] shows that the allegations against it could give rise to a covered claim
> and if [the insurer] cannot show that such a claim would be expressly excluded,
> then [the insurer] owes [the claimant] a full defense.

*Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 152 F. Supp. 3d 15, 20 (D.Mass. 2015).

NGM asserts that it has no duty to defend M. Pillsbury in the underlying state court actions because there is no coverage under the Policy for the Ford Flex, the car M. Pillsbury was driving at the time of the accident. More specifically, NGM asserts that the Ford Flex (1) was not expressly listed as a "covered auto" under the Policy, (2) was not a vehicle that was "hired" by M. Pillsbury since he did not rent, lease or borrow it, and (3) was not a vehicle which M. Pillsbury used in his business. NGM focuses on whether M. Pillsbury "borrowed" the Ford Flex from J. Pillsbury and argues that under the common understanding of the meaning of the word, M. Pillsbury did not "borrow" the vehicle because his wife J. Pillsbury, who was a passenger in the car, maintained control over the vehicle. NGM further asserts that assuming that M. Pillsbury did "borrow" the Ford Flex from his wife, coverage would be barred because M. Pillsbury's business is an LLC of which he is a member and the Ford Flex was owned by a household member.[4]

The term "borrow" is not defined in the Policy and therefore, must be given its standard and ordinary meaning. While I have not found any Massachusetts, or cases in this District defining the term "borrow" under similar circumstances, courts in other jurisdictions have ascribed the following meanings to the term: (1) "[t]o obtain or receive (something) on loan with the promise or understanding of returning it or its equivalent." *Kentucky Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.,* 919 N.E.2d 565, 579 (Ind. Ct. App. 2010); (2) "'[t]o receive temporarily from another, implying or expressing the intention either of returning the thing received or of

---

[4]   There is no dispute that the Ford Flex was not described in the "Declaration" section (only the 2012 Nissan is listed) and therefore, the "Specifically Described" covered auto provision does not apply. Moreover, despite the Defendants' spurious assertions, the undisputed evidence is that M. Pillsbury never used the Ford Flex in connection with his business and therefore, the "Non-Owned" covered auto provision does not apply. Consequently, the Court will focus solely on whether the Ford Flex is a covered auto under the "Hired Auto" provision.

giving its equivalent to the lender.'" *Am. Inernat. Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co.*, 181 Cal. App. 4th 616, 625–26, 105 Cal. Rptr. 3d 64, 70–71 (2010)(citing *Home Indemnity Company v. King*, 34 Cal.3d 803, 195 Cal.Rptr. 686, 670 P.2d 340); *see also Metzger v. Country Mut. Ins. Co.*, 2013 IL App (2d) 120133, ¶38, 986 N.E.2d 756, 764 (2013)(same); *Gold v. Casserly Landscape, Inc.*, 107 Or. App. 441, 444, 812 P.2d 33, 34 (1991)(same); (3) "someone who, with the permission of the owner, has temporary possession and use of the property for his own purposes; possession connotes the right to exercise dominion and control." *Id.* (citing *Liberty Mut. Ins. Co. v. Am. Emp. Ins. Co.,* 556 S.W.2d 242, 244–245 (Tex. 1977); (4) "not only that one receives the benefit of the borrowed object's use, but also that the borrower receives temporary possession, dominion, *or* control of the use of the thing. *Davis v. Cont'l Ins. Co.*, 102 Ohio App. 3d 82, 87, 656 N.E.2d 1005, 1008 (1995); (5) "vehicle is borrowed when someone other than the owner temporarily gains its use." *Andresen v. Employers Mut. Cas. Co.*, 461 N.W.2d 181, 185 (Iowa 1990), and (6) definitions of "borrow" in cases generally have an element of receipt or possession of property. *Northland Ins. Co. v. Barnhart Crane & Rigging Co.*, No. 12 C 5525, 2013 WL 6859279, at *13 (N.D. Ill. Dec. 30, 2013). The current Merriam-Webster dictionary definitions of "borrow" are "to receive with the implied or expressed intention of returning the same or an equivalent" and "to appropriate for one's own use." www.merriam-webster.com/dictionary/borrow (2019). As set forth above, a number of courts adopt one of these definitions or their equivalent.   At the same time, as asserted by NGM, many courts also hold that in the context of "automobile lending," the term "*borrow* … requires that the borrower acquire substantial possession, dominion, control, or the right to direct the use of the vehicle, and not merely that the use of the vehicle by another person redound by chance to

the benefit of a purported borrower." *Hanneman v. Cont'l W. Ins. Co.*, 1998 ND 46, ¶ 35, 575 N.W.2d 445, 452 (N.D. 1998).

The Court has not found any cases in which an individual driving a car owned by his spouse while the spouse/owner was a passenger in the car was found to have "borrowed" the car. In *Hanneman,* the case that is the most analogous to the instant case, the court found that an individual who acted as a "designated driver" for the owner of the car, who was a passenger, had not "borrowed" the car because even with that individual behind the wheel, the owner remained in possession and control of the vehicle. *Id.*

In this case, M. Pillsbury and his wife attended a wedding reception together; the wedding reception was for a colleague of J. Pillsbury. M. Pillsbury drove the Ford Flex home while J. Pillsbury was a passenger. The record does not include any facts as to the circumstances as to why M. Pillsbury was driving the car rather than his wife, but it is clear that they were both in the car at the time of the accident.   It is not necessary for me to determine whether the standard and ordinary meaning of the term "borrow" includes the right to retain dominion and control because under any of the definitions which courts have adopted, M. Pillsbury did not "borrow" his wife's car. More specifically, M. Pillsbury never "received" his wife's car with an intent to return it because she never relinquished the vehicle to him.[5] Accordingly, the underlying allegations are not "reasonably susceptible" of an interpretation that asserts a claim

---

[5] One of the facts which Defendants point to in support of their contention that the Ford Flex was "borrowed" was that M. Pillsbury picked up another individual and drove to the wedding in the Ford Flex separately from his wife. Because this fact is not properly before the court, *see* footnote 1, *supra* I have not considered it in my analysis.   However, even if I were to consider it, it would seem that when J. Pillsbury drove home with M. Pillsbury, the car had been returned to her, *i.e,* M. Pillsbury was not "borrowing" the car at the time of the accident.

covered by the Policy. Therefore, NGM has no duty to defend M. Pillsbury and/or J. Pillsbury in the state court actions.

## *Determining Coverage*

Under Massachusetts law the duty to defend is broader than the duty to indemnify, and therefore, a finding that there is no duty to defend generally "negates a duty to indemnify."

*Liberty Mut. Ins. Co. v. Metro. Life Ins. Co.*, 260 F.3d 54, 62 (1st Cir. 2001). However,

> "[w]hereas an insurer's duty to defend is 'measured by the allegations of the underlying complaint,' the duty to indemnify is 'determined by the facts, which are usually established at trial.' Accordingly, a declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes. '[A]ny determination as to the obligation of the insurer to indemnify its insured would now be premature and must await the resolution of the underlying claim.' A declaration of the [insurer's] duty to indemnify must wait until the underlying action is resolved. [The Court] observe[s] at this point, however, that having determined there is no duty to defend, there is necessarily no demonstrated basis for a duty to indemnify.

*Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp. 3d 364, 372 (D. Mass. 2015); *see also Atain Specialty Ins. Co. v. Bos. Rickshaw LLC,* 387 F. Supp. 3d 157, 160 (D. Mass. 2019)(courts frequently hold that an insurer's duty to indemnify does not become ripe for adjudication until the underlying lawsuit for liability is resolved).

NGM's action for a declaratory judgment regarding the J. Mansfield state court action is not yet ripe for adjudication.  The parties have indicated that the Estate's state court action against the Defendants has settled but the Court does not have any details regarding the settlement; it is not clear whether NGM's request for a declaratory judgment regarding that matter is ripe for adjudication. A status conference will be held on November 8 at 2:30 p.m.

The parties should be prepared to discuss how they wish to proceed regarding the issue of indemnification.

### **Conclusion**

NGM Insurance Company's Motion for Summary Judgment (Docket No. 30) is ***granted*** as to the duty to defend and ***denied*** as to the duty to indemnify.


/s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**